IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| FINEOLA INGRAM, et al., ) | |
| Plaintiffs, ) | |
| v. ) | No. 2:15-cv-04156-NKL |
| COLE COUNTY, et al., ) | |
| Defendants. ) | |

**ORDER**

Plaintiffs Fineola Ingram, Justin Simmons, and Brian Boykin sue on behalf of themselves and a putative class of persons who are, or were, detained at the Cole County, Missouri Detention Center. They allege the jail's clothing policies violate their rights under the United States and Missouri Constitutions. They sue Defendant Cole County, Missouri, which operates the jail, and Defendants Cole County Sheriff Greg White and Chief Deputy Sheriff John Wheeler, who are the jail administrators. The Defendants move to dismiss the complaint in its entirety, or in the alternative to strike certain allegations. [Doc. 16.] The motion to dismiss is granted, and the remainder of the motion is denied as moot.

**I.   Background[1]**

Plaintiff Boykin was detained in the jail in March 2015, and remained detained there through at least the time of filing of the Complaint. Plaintiff Ingram was detained in the jail beginning in November 2013, for about 85 days. Plaintiff Simmons was detained in the jail from April 1, 2013 until September 27, 2013, and again from April 27, 2015 until July 9, 2015.

---

[1] The facts are from the Complaint. [Doc. 1.] For purposes of deciding the Defendants' motion to dismiss, the Court accepts the Plaintiffs' factual allegations as true and construes them in the light most favorable to the Plaintiffs. *See Stodghill v. Wellston Sch. Dist.*, 512F.3d 472, 476 (8th Cir. 2008).

The Plaintiffs allege:

21. Each male detainee is given and limited to one pair of socks, underwear, undershirt, outer shirt, pants, and shoes. Female detainees are given a bra as well. Each detainee must surrender these items if they want them to be laundered and must then remain naked in their jail cell while the clothing is being laundered.

22. The Jail requires that in order to receive a laundered set of clothes and underwear, the Plaintiffs and other detainees have to surrender their clothes and then remain naked in their cell while the clothing and underwear is being laundered.

23. The clothes of females in the Jail are laundered every four days. At one time since the Jail opened its new location, the clothes of males were laundered once a week. Currently, the clothes of males are laundered every 2-3 days.

24. Detainees at the jail, including Plaintiffs, were provided only one bed sheet and one blanket.

25. The bed-sheets and blankets given inmates are not laundered and replaced at reasonable nor regular intervals. For example, from April 27, 2015 until his pretrial release on July 9, 2015, Plaintiff Simmons' bed-sheet and blanket were only replaced two times.

26. The cell in which detainees are placed has a window that detainees are not allowed to cover when they are naked in their cell during the laundering of their clothing or while they shower or use the toilet in their cell.

27. Males and females are forced to go naked for at least 7 hours if they wish to have clean clothing.

28. During the laundering of the clothes, the Plaintiffs remain in a cell that does not provide them privacy from Jail guards of the same or opposite sex or from their cellmate.

29. After the clothes are laundered, Jail guards return the clothes to Plaintiffs' cells after entering in the early hours of the morning and sometimes without giving the detainees notice. Male guards return laundered clothing to female inmates and in doing so must open and enter such naked female detainees' cells, causing these female detainees to be seen by members of the opposite sex

2

and certainly being seen in their condition without their permission.

30. Upon information and belief, female guards on occasion also deliver laundered clothing to male inmates causing these male detainees to be seen by members of the opposite sex and certainly being seen in their condition without their permission.

[Doc. 1, p. 5-6.][2]

The jail has a Jail Inmate Rule Book. The book includes rules relating to nudity, personal hygiene, general cleanliness, and the content of jail cells:

- You will keep your bunk and common area clean and sanitary at all times.

- No art work, documents, or other items will be attached or hung from walls.

- You will not cover or block any windows, vents, or drains.

- You will not hang anything that would prevent full visibility of the cell.

- You will wear the issued undergarments as designed at all times unless you are actively showering or using the toilet.

- You will not expose breast, buttocks, or genitals[] except as necessary to actively shower or use the toilet.

- Inmates will be visible during counts.

- You will maintain a clean body while housed in the Cole County Jail. … Failure to maintain personal hygiene will result in disciplinary action or the appropriate amount of forced used to ensure inmates maintain their hygiene.

- Inmates will be given one pair of socks, underwear, undershirt, outer shirt, pants and shoes. … No personal clothing will be authorized to be worn by inmates.

---

[2] The Plaintiffs do not allege that they are viewed while naked by detainees of the opposite sex, or members of the public.

3

- Inmates who damage inmate clothing or linen will be required to reimburse the Jail for the cost of the damaged item and they may be charged with an additional crime of property damage.

- Inmate clothing and linen will be exchanged for clean items at pre-scheduled intervals. During clothing or linen exchange, inmates will only be given an item to replace an issued item handed to the officer. The items must be given to the officer before the officer will hand a replacement item. Clothing exchange is vital to the hygiene of inmates.

[Doc. 1, pp. 6-7, ¶ 35.]

The Plaintiffs further allege:

> 33. Detainees at the Jail, including but not limited to Plaintiffs, are forced to violate Jail Rules due to the laundry policies.
>
> 34. Detainees may not engage in alternative means to clean their undergarments and other clothing without violation of Jail Rules and risking discipline.

[*Id.*, p. 7.]

The Plaintiffs sue under the Eighth and Fourteenth Amendments to the United States Constitution, and the similar sections of the Missouri Constitution.

## II. Discussion

The Defendants argue dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) because the Plaintiffs fail to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is appropriate when a complaint fails to allege facts establishing each element of the claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Thus, while well-pleaded allegations of fact are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not. *Iqbal*, 556 U.S. at 678. The allegations must rise above the "speculative" or "conceivable," and must "state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 547, 555, 563, 570). *See also Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) ("Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate.").

### A. Constitutional claims

As detainees at the time of the alleged constitutional violation, the Plaintiffs' claims are analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013). The standards for analysis of the Plaintiffs' claims under the Missouri Constitution are the same as the federal ones. *See Burnett v. State*, 311 S.W.3d 810, 814 n.3 (Mo. Ct. App. 2009).

Pretrial detainees are entitled to "'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (internal quotation and citations omitted). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Id.* (*quoting Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir. 2010)). Therefore, pretrial detainees "'are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time.'" *Id.* (*quoting Beaulieu v. Ludeman,* 690 F.3d 1017, 1045 (8th Cir. 2012)).

The Plaintiffs assert that having to remain without clothing in their cells for a period of seven hours every few days if they wish to have their one set of jail-issued clothing laundered violates their constitutional rights.

The Eighth Circuit "has not adopted an unconditional prohibition against deprivations of necessities. Rather, [it] considers several factors in determining the constitutionality of deprivations, including the degree and duration of the deprivations, the reason for the deprivations, and the other surrounding circumstances." *Green v. Baron,* 879 F.2d 305, 310 (8th

5

Cir. 1989) (*citing Johnson v. Williams,* 788 F.2d 1319, 1323 (8th Cir. 1986), and *Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir. 1988)). "A minimal deprivation does not violate the Constitution." *Id.* (*citing Bell v. Wolfish,* 441 U.S. 520, 539 n. 21 (1979)). In other words, "[n]ot every deprivation ... rises to the level of punishment under the due process clause." *Id.*

Courts routinely reject Eighth Amendment claims concerning lack of clothing, and analogous claims, on the basis that the alleged deprivation is not sufficiently serious. For example, in *Rodgers v. Thomas*, 879 F.2d 380, 382 (8th Cir. 1989), a prisoner in a work-release center who violated his furlough was stripped to his underwear and socks, and placed in an isolation cell where he was kept for five days. The Eighth Circuit concluded that the removal of his clothing "served no justifiable penological objective and was a punitive measure," but that he was given sheets and a blanket with which he could cover himself. *Id.* at 384. As for extent of injury, the prisoner "alleged only that he suffered from flu symptoms after being placed in the isolation cell, and he presented no evidence of physical or emotional pain or injury." *Id.* Summarizing its rejection of the prisoner's Eighth Amendment claim, the Eighth Circuit held,

> [A]lthough the deprivation of Rodgers' clothing was totally unjustified, the other conditions of his confinement were humane and sanitary, and the extent of the pain and injury which he suffered, if any, was minimal. Consequently, we agree with the district court that, based on the totality of the circumstances surrounding his confinement, Rodgers did not suffer "unnecessary and wanton infliction of pain" and thus was not subjected to cruel and unusual punishment. Furthermore, Rodgers failed to … present evidence of pain.

*Id.* at 385.

In *Smith v. Copeland*, 87 F.3d 265, 267 (8th Cir. 1996), a jail detainee claimed his civil rights were violated when he was placed in solitary confinement without clothing, bedding, or blankets. He also claimed he was exposed to raw sewage in his cell because of the condition of

the toilet. The jail officials put on evidence, which the detainee did not dispute, that the detainee was offered the opportunity to flush the toilet and a means of cleaning up the mess, but that the detainee refused. The Eighth Circuit affirmed the district court's grant of summary judgment to the jail officials, because the prisoner was only exposed to these conditions for four days, and the raw sewage allegation amounted to no more than a *de minimis* imposition that did not implicate constitutional concerns.

In *Dundee v. Rambo*, 2011 WL 776161, at *2 (W.D. Ark. Feb. 3, 2011), *report and recommendation adopted,* 2011 WL 1086504 (W.D. Ark. Feb. 28, 2011), a jail detainee alleged there was no regular laundry schedule and he was forced to wear the same clothing for weeks, which caused rashes. He alleged he was issued a shirt and pants, but no towel, underwear, or socks. When the jail did the laundry, detainees would place their clothes in a bag and wait until the laundry was returned. The plaintiff was not initially issued a towel, and had to use his shirt to dry himself after showers, until another detainee left and he then received a towel. The district court dismissed his Eighth Amendment claim, holding he had not alleged more than *de minimis* injury. "[D]iscomfort compelled by conditions of confinement, without more, does not violate" the Eighth Amendment. *Id.* at *8. *See also Williams v. Delo,* 49 F.3d 442, 444–47 (8th Cir. 1995) (inmate's deprivation of clothes, running water, hygiene supplies, blanket, and mattress for four days did not violate inmate's Eighth Amendment rights); and *Gutridge v. Chesney,* 1998 WL 248913, at *1 (E.D. Pa. May 8, 1998) (allegation that inmate's blanket was removed for approximately a month and a half failed to state Eighth Amendment claim).

Examining the totality of the circumstances here, the Court concludes the Plaintiffs have alleged no more than minimal deprivation. While detainees must send their entire set of clothing to be laundered, and must remain naked for seven hours, the laundry is being done overnight.

7

Detainees are sleeping in the nude, not going about their activities during the waking part of the day in the nude. Furthermore, detainees are issued a sheet and a blanket, as the Plaintiffs allege, and may cover themselves with sheet and blanket if they wish. The Plaintiffs allege that their sheets and blankets are infrequently washed, but they do not claim that having to use such bedding when sleeping naked caused any pain or injury, nor do they allege any other pain or injury that rises to the level of a constitutional vioaltion. The Plaintiffs' claims are similar to those rejected in the cases discussed above.

The Plaintiffs do complain that the laundry policy can cause them to be seen naked by opposite-sex guards without the Plaintiffs' consent, and by their cellmates. But the Plaintiffs "have no general right [not to be] seen naked by guards of the opposite sex," *Hill v. McKinley*, 311 F.3d 899, 904-05 (8th Cir. 2002), nor any "reasonable expectation of privacy in their jail cells," *Arnzen v. Palmer,* 713 F.3d 369, 372 (8th Cir. 2011). *See also Story v. Foote*, 782 F.3d 968, 973 (8th Cir. 2015) (detainee's right not to be viewed naked by opposite sex jailers and by other inmates is extremely limited, even in the context of highly invasive body cavity searches; officers granted qualified immunity because they were "not on clear notice that the aspects of the search…contravened the Fourth Amendment."). Furthermore, regardless of whether a different policy could result in less observation while naked, a court's "inquiry is limited to the question of whether constitutional violations have occurred and may not reflect [the court's] idea of how best to run [a] prison." *Johnson v. Williams,* 788 F.2d 1319, 1325 (8th Cir. 1986).

Of course, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so. This is true when the deprivations have a mutually enforcing effect which produces the deprivation of a single, identifiable human need, such as food or warmth, for example 'a low cell temperature at night combined with a

failure to issue blankets.'" *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) *(quoting Wilson,* 501 U.S. at 304). *See also Gordon v. Faber,* 800 F. Supp. 797, 798-99 (N.D. Iowa 1992) (prisoners were forced to go to outside exercise yard in sub-freezing weather without hats or gloves, and suffered pain). The laundry policy at issue here creates no combination of factors that establish a constitutional violation.

The Plaintiffs also seem to suggest that the jail rules, which require inmates to remain clothed except to shower or use the toilet, and to maintain good hygiene, establish or demonstrate constitutional requirements. But "[t]here is no federal liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003).[3]

Finally, the Plaintiffs argue that the laundry policy has no purpose beyond demonstrating officials' ability to impose such policy "'because they can,' or at least think they can." [Doc. 27, p. 9.] The jail rules to which the Plaintiffs point expressly mention cleanliness and hygiene, in the context of clothing and linen exchange. [*See* Doc. 1, p. 7, ¶ 35.] That the alleged laundry practice promotes cleanliness and hygiene in an insensitive manner does not alone make it unconstitutional. Even if the Court were to conclude that the policy could serve no valid penological purpose, such conclusion alone would not make it unconstitutional. *See Rodgers v. Thomas*, 879 F.2d 380, 384 (8th Cir. 1989) ("While it is material that a condition of confinement is imposed for punitive, rather than administrative or protective reasons, "a punishment or condition of confinement is not rendered unconstitutional simply because it serves no valid penological purpose.") (*citing Maxwell v. Mason,* 668 F2d 361, 364 n. 9 (8th Cir. 1981) and

---

[3] Similar to the way in which jail rules cannot establish constitutional standards, neither can the provisions of the Geneva Convention which the Plaintiffs set out in their Complaint. The Plaintiffs concede in their suggestions in opposition that they did not intend to allege that the Geneva Convention establishes constitutional standards. [Doc. 27, p. 7 n.4.]

*Hutto v. Finney,* 437 U.S. 678, 686 n. 8 (1978)). Rather, the totality of the factors is considered.

The Plaintiffs fail to state a claim under the Eighth and Fourteenth Amendments, or corresponding provisions of the Missouri Constitution.

### B. Qualified immunity

Defendants White and Wheeler argue that as jail officials, they are entitled to qualified immunity with respect to the federal claims brought against them in their individual capacities. An official is entitled to qualified immunity unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Deciding qualified immunity is a two-step process. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first step is to determine whether a constitutional violation is adequately alleged. The second step is to decide whether "the right asserted was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearer*, 729 F.3d 1070, 1074 (8th Cir. 2013).

As explained above, the Plaintiffs allege no viable constitutional violation. Therefore, Defendants White and Wheeler have qualified immunity with respect to the federal constitutional claims against them in their individual capacities.

### III. Conclusion

The Defendants' motion to dismiss is granted and the alternative request to strike certain allegations is denied as moot. [Doc. 16.]

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: September 24, 2015
Jefferson City, Missouri